Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSAN LEONHART, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>NATURE'S PATH FOODS, INC.,<br><br>    Defendant. | Case No. CV13-0492 (EJD)<br><br>**FIRST AMENDED CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Susan Leonhart, ("Plaintiff") through her undersigned attorneys, brings this lawsuit against Defendant Nature's Path Foods, Inc., (collectively, "Nature's Path" or "Defendant") as to her own acts upon personal knowledge, and as to all other matters upon information and belief.

### I.    DEFINITIONS

1.    "Class Period" is February 4, 2009 to the present.

2.    "Purchased Products" are the Nature's Path products listed below (2a-2b) that were purchased by Plaintiff during the Class Period:

        a.    EnviroKidz Panda Puffs cereal;

        b.    Heritage Flakes cereal;

-1-

3.      "Substantially Similar Products" are the Nature's Path products listed in paragraph 4 below.  Each of these listed products: (i) make the same label representations, as described herein, as the Purchased Products, (ii) contain the same or most of the same ingredients as the Purchased Produces, and/or (iii) violate the same regulations of the Sherman Food Drug & Cosmetic Law, California Health & Safety Code § 109875, *et seq.* (the "Sherman Law") as the Purchased Products, as described herein.

4.      Upon information and belief, these Substantially Similar Products are the Nature's Path products, sold during the Class Period, listed below.  Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that other Nature's Path products had labels which violate the same provisions of the Sherman Law and have the same label representations as the Purchased Products:

a.      **Cold Cereals**: Crunchy Maple Sunrise, Crunch Vanilla Sunrise, Flax Plus Maple Pecan Crunch,  Flax Plus Multibran Flakes, Flax Plus Pumpkin Raisin Crunch, Flax Plus Raisin Bran Flakes, Flax Plus Red Berry Crunch, Heritage Crunch, Flax Plus with Cinnamon, Chia Plus Chia Coconut Granola, Flax Plus Pumpkin Flax Granola, Flax Plus Vanilla Almond Crunch, Hemp Plus Granola, High Fiber Cinnamon Raisin Granola, Peanut Butter Granola, Pomegran Cherry Granola, Optimun  Blueberry Cinnamon Flax, Optimum Slim Low Fat Vanilla, Crispy Rice, Heritage Flakes, Heritage O's, Honey'd O's, Mesa Sunrise, Mesa Sunrise with Raisins, Whole O's;

b.      **Hot Cereals**:  Maple Nut Hot Oatmeal, Apple Cinnamon Hot Oatmeal, Flax Plus Hot Oatmeal, Optimum Power Blueberry Cinnamon Flax Hot Oatmeal, Variety Pack Hot Oatmeal, Multigrain Raisin Spice Hot Oatmeal, Optimum Cranberry Ginger Hot Oatmeal, Hemp Plus Hot Oatmeal;

c.      **Premium Granolas**:  Aloha Blend. Apple Crumble, Carrot Cake, Dark Chocolate & Red Berries;

d.   **EnviroKids**:  Amazon Frosted Flakes, Gorilla Munch Cereal, Koala Crisp, Leapin Lemurs, Panda Puffs, Cheetah Berry, Kaola Chocolate, Lemur Peanut Choco, Panda Peanut Butter, Penguin Fruity Burst;

e.   **Baking Mixes**:  Buttermilk Pancake mix, Flax Plus Multigrain Pancake mix,

f.    **Bars**:  Pumpkin-N-Spice Flax Plus Granola Bars, Macaroon Crunch Granola Bars, Apple Pie Crunch Chia Plus Granola Bars, Peanut Choco Crunch Ancient Grains Granola Bars, Honey Oat Crunch Flax Plus Granola Bars, Sunny Hemp Hemp  Plus Granola Bars, EnviroKidz peanut Choco Drizzle Crispy Rice Bars, EnviroKidz Chocolate Crispy Rice Bars, Lotta Apricotta Granola Bars, EnviroKidz Peanut Butter Crispy Rice Bars, EnviroKidz Berry Blast Crispy Rice Bars, Peanut Choco Granola Bars, Chococonut Granola Bars, Mmmaple PecanFlax Plus Granola Bars, EnviroKidz Fruity Burst Crispy Rice Bars, Peanut Buddy Granola Bars, Berry Strawberry Flax Plus Granola Bars;

g.   **Toaster Pastries**:  Frosted Mmmaple Brown Sugar Toaster Pastries, Unfrosted Bunch Blueberries Toaster Pastries, Frosted Cherry Pomegranate Toaster Pastries, Frosted Lotta Chocolotta Toaster Pastries, Frosted Berry Strawberry Toaster Pastries, Unfrosted Berry Strawberry Toaster Pastries, Frosted Granny's Apple Pie Toaster Pastries, Frosted Wildberry Acai Toaster Pastries, Unfrosted Granny's Apple Pie Toaster Pastries, Frosted Buncha Blueberries Toaster Pastries, Frosted Razzi Raspberry Toaster Pastries;

h.   **Waffles**:  Buckwheat Wildberry Frozen Waffles. Maple Cinnamon Frozen Waffles, Flax Plus Frozen Waffles, Ancient Grains Frozen Waffles, and Hemp Plus Frozen Waffles.

## II.   SUMMARY OF THE CASE

5.     Plaintiff's case has two facets.  First, the "UCL unlawful" part. Plaintiff's first cause of action is brought pursuant to the unlawful prong of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ("UCL").  Plaintiff alleges that Defendant packaged and labeled the Purchased Products in violation of California's Sherman Law which adopts, incorporates – and is identical – to the federal Food Drug & Cosmetic Act, 21 U.S.C. § 301 *et seq.* ("FDCA").  These violations (which do not require a finding that the labels are "misleading") render the Purchased Products "misbranded" which is no small thing.  Under California law, a food product that is misbranded cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless. Indeed, the sale, purchase or possession of misbranded food is a criminal act in California and the FDA even threatens food companies with seizure of misbranded products.   This "misbranding" – standing alone without any allegations of deception by Defendant or review of or reliance on the labels by Plaintiff – give rise to Plaintiff's first cause of action under the UCL.

6.     Second, the "deceptive" part. Plaintiff alleges that the labels on the Purchased Products – aside from being unlawful under the Sherman Law – are also misleading, deceptive, unfair and fraudulent.  Plaintiff describes these labels and how they are misleading.  Plaintiff alleges that she reviewed the labels on the Purchased Products, reasonably relied in substantial part on the labels, and was thereby deceived, in deciding to purchase these products.  Moreover, the very fact that Defendant sold such misbranded products and did not disclose this fact to consumers is a deceptive act in and of itself.  Plaintiff would not have purchased a product that is illegal to own or possess.  Had Defendant informed Plaintiff of this fact there would have been no purchases.

7.     Plaintiff did not know, and had no reason to know, that the Defendant's Purchased Products were misbranded under the Sherman Law and bore food labeling claims that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that Defendant's Purchased Products were false and misleading.

### III.   BACKGROUND

8.      Identical California and federal laws require truthful, accurate information on the labels of packaged foods. This case is about companies selling misbranded food to consumers. The law, however, is clear: misbranded food cannot legally be sold, possessed, has no economic value and is legally worthless. Purchasers of misbranded food are entitled to a refund of their purchase price.

9.      Identical California and federal laws regulate the content of labels on packaged food. The requirements FDCA were adopted by the California Sherman Law.  Under both the Sherman Law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling.  21 U.S.C. § 343(a).

10.     Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any single representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.

11.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, held or sold.  Misbranded products cannot be legally sold, possessed, have no economic value, and are legally worthless.  Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

12.     Nature's Path website, www.naturespath.com, is incorporated into the label for each Nature's Path product that bears that web address.  All Purchased Products bear this website. According to the FDA and as a matter of law, the Nature's Path website and all linked websites constitute the labeling of any product bearing this web address.

13.     If a manufacturer, like Nature's Path, is going to make a claim on a food label, the label must meet certain legal requirements that help consumers make informed choices and ensure that they are not misled and that label claims are truthful, accurate, and backed by scientific evidence.  As described more fully below, Defendant has sold products that are misbranded and are

worthless because (i) the labels violate the Sherman Law and, separately, (ii) the Defendant made, and continues to make, false, misleading and deceptive claims on its labels.

14.     Plaintiff brings this action under California law, which is identical to federal law, for a number of the Defendant's food labeling practices which are both (i) unlawful and (ii) deceptive and misleading to consumers.  These include:

    a.     Labeling products with the ingredient "evaporated cane juice;"

    b.     Products labeled or advertised with an unapproved  health or drug claim;

    c.     Products labeled or advertised with a low sodium claim despite containing levels of sodium exceeding the maximum level of 140 mgs specified in 21 C.F.R. § 101.61;

    d.     Products that contain preservatives but whose labels claim they are "free" of preservatives and do not disclose those the preservatives on the label;

    e.     Products sold in packaging containing non-functional slack fill;

## IV.     PARTIES

15.     Plaintiff Susan Leonhart is a resident of Los Gatos, California who bought the Nature's Path Purchased Products listed above during the Class Period.

16.     Defendant Nature's Path Foods, Inc. is a corporation which does business throughout California and the United States, with its principal place of business located at 2220 Nature's Path Way, Blaine, Washington 98230. Nature's Path may be served with process of this Court by service on its California registered agent for service of process, J. Craig Williams, 3 Park Plaza, 17th Floor, Irvine, CA 92614.

17.     Defendant is one of the leading privately owned organic food companies in North America.  The company sells, among other products, organic cereals, waffles, snack bars and breads in California, and throughout the United States as well as in many countries around the world. Nature's Path is North America's leading organic cereal company. Defendant sells its food products to consumers through grocery and other retail stores throughout the United States.

18.     California law applies to all claims set forth in this First Amended Complaint because Plaintiff lives in California and purchased the Purchased Products there.  Also, the

Defendant does business in California.  All or most of the misconduct alleged herein was contrived in, implemented in, and/or has a shared nexus with California.

19.     Accordingly, California has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

**V.     JURISDICTION AND VENUE**

20.     This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action in which:  (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendants; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

21.     Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C. § 1332, because the matter in controversy exceeds the sum or value of $75,000, and is between citizens of different states.

22.     The Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged in this First Amended Complaint occurred in California, Defendant is authorized to do business in California, has sufficient minimum contacts with California, and otherwise intentionally avails itself of the markets in California through the promotion, marketing and sale of merchandise, sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

23.     Because a substantial part of the events or omissions giving rise to these claims occurred in this District and because the Court has personal jurisdiction over Defendant, venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) and (b).

**VI.     FACTUAL ALLEGATIONS**

**A.     <u>Identical California And Federal Laws Regulate Food Labeling</u>**

24.     Food manufacturers are required to comply with identical federal and state laws and regulations that govern the labeling of food products.  First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

25.     Pursuant to the Sherman Law, California has expressly adopted the federal labeling requirements as its own and indicated that "[a]ll food labeling regulations and any amendments to

1  those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or

2  after that date shall be the food regulations of this state." California Health & Safety Code

3  §110100.

4       26.    In addition to its blanket adoption of federal labeling requirements, California has

5  also enacted a number of laws and regulations that adopt and incorporate specific enumerated

6  federal food laws and regulations. For example, food products are misbranded under California

7  Health & Safety Code § 110660 if their labeling is false and misleading in one or more particulars;

8  are misbranded under California Health & Safety Code § 110665 if their labeling fails to conform

9  to the requirements for nutrient labeling set forth in 21 U.S.C. § 343(q) and regulations adopted

10  thereto; are misbranded under California Health & Safety Code § 110670 if their labeling fails to

11  conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r)

12  and regulations adopted thereto; are misbranded under California Health & Safety Code § 110705 if

13  words, statements and other information required by the Sherman Law to appear on their labeling

14  are either missing or not sufficiently conspicuous; are misbranded under California Health & Safety

15  Code § 110735 if they are represented as having special dietary uses but fail to bear labeling that

16  adequately informs consumers of their value for that use; and are misbranded under California

17  Health & Safety Code § 110740 if they contain artificial flavoring, artificial coloring and chemical

18  preservatives but fail to adequately disclose that fact on their labeling.

19      **B.**    **FDA Enforcement History**

20       27.    In recent years the FDA has become increasingly concerned that food manufacturers

21  were disregarding food labeling regulations. To address this concern, the FDA elected to take steps

22  to inform the food industry of its concerns and to place the industry on notice that food labeling

23  compliance was an area of enforcement priority.

24       28.    In October 2009, the FDA issued a *Guidance For Industry: Letter regarding Point*

25  *Of Purchase Food Labeling* to address its concerns about front of package labels ("2009 FOP

26  Guidance"). The 2009 FOP Guidance advised the food industry:

27
28      FDA's research has found that with FOP labeling, people are less likely to check the
    Nutrition Facts label on the information panel of foods (usually, the back or side of
    the package). It is thus essential that both the criteria and symbols used in front-of-

-8-

package and shelf-labeling systems be nutritionally sound, well-designed to help consumers make informed and healthy food choices, and not be false or misleading. The agency is currently analyzing FOP labels that appear to be misleading. The agency is also looking for symbols that either expressly or by implication are nutrient content claims. We are assessing the criteria established by food manufacturers for such symbols and comparing them to our regulatory criteria.

It is important to note that nutrition-related FOP and shelf labeling, while currently voluntary, is subject to the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. Therefore, FOP and shelf labeling that is used in a manner that is false or misleading misbrands the products it accompanies. Similarly, a food that bears FOP or shelf labeling with a nutrient content claim that does not comply with the regulatory criteria for the claim as defined in Title 21 Code of Federal Regulations (C.F.R.) 101.13 and Subpart D of Part 101 is misbranded. We will consider enforcement actions against clear violations of these established labeling requirements. . .

… Accurate food labeling information can assist consumers in making healthy nutritional choices. FDA intends to monitor and evaluate the various FOP labeling systems and their effect on consumers' food choices and perceptions. FDA recommends that manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA laws and regulations. FDA will proceed with enforcement action against products that bear FOP labeling that are explicit or implied nutrient content claims and that are not consistent with current nutrient content claim requirements. FDA will also proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading.

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm187208.htm

29.     The 2009 FOP Guidance recommended that "manufacturers and distributors of food products that include FOP labeling ensure that the label statements are consistent with FDA law and regulations" and specifically advised the food industry that it would "proceed with enforcement action where such FOP labeling or labeling systems are used in a manner that is false or misleading."

30.     Defendant knew or should have known about the 2009 FOP guidance.

31.     Despite the issuance of the 2009 FOP Guidance, Defendant did not remove the unlawful and misleading food labeling claims from its Misbranded Food Products.

32.     On March 3, 2010, the FDA issued an "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg" (hereinafter, "Open Letter"). The Open Letter reiterated the FDA's

-9-

concern regarding false and misleading labeling by food manufacturers. In pertinent part the letter stated:

> In the early 1990s, the Food and Drug Administration (FDA) and the food industry worked together to create a uniform national system of nutrition labeling, which includes the now-iconic Nutrition Facts panel on most food packages. Our citizens appreciate that effort, and many use this nutrition information to make food choices. Today, ready access to reliable information about the calorie and nutrient content of food is even more important, given the prevalence of obesity and diet-related diseases in the United States. This need is highlighted by the announcement recently by the First Lady of a coordinated national campaign to reduce the incidence of obesity among our citizens, particularly our children.
>
> With that in mind, I have made improving the scientific accuracy and usefulness of food labeling one of my priorities as Commissioner of Food and Drugs. The latest focus in this area, of course, is on information provided on the principal display panel of food packages and commonly referred to as "front-of-pack" labeling. The use of front-of-pack nutrition symbols and other claims has grown tremendously in recent years, and it is clear to me as a working mother that such information can be helpful to busy shoppers who are often pressed for time in making their food selections.…
>
> As we move forward in those areas, I must note, however, that there is one area in which more progress is needed. As you will recall, we recently expressed concern, in a "Dear Industry" letter, about the number and variety of label claims that may not help consumers distinguish healthy food choices from less healthy ones and, indeed, may be false or misleading.
>
> At that time, we urged food manufacturers to examine their product labels in the context of the provisions of the Federal Food, Drug, and Cosmetic Act that prohibit false or misleading claims and restrict nutrient content claims to those defined in FDA regulations. As a result, some manufacturers have revised their labels to bring them into line with the goals of the Nutrition Labeling and Education Act of 1990. Unfortunately, however, we continue to see products marketed with labeling that violates established labeling standards.
>
> To address these concerns, FDA is notifying a number of manufacturers that their labels are in violation of the law and subject to legal proceedings to remove misbranded products from the marketplace. While the warning letters that convey our regulatory intentions do not attempt to cover all products with violative labels, they do cover a range of concerns about how false or misleading labels can undermine the intention of Congress to provide consumers with labeling information that enables consumers to make informed and healthy food choices.
>
> . . . .
>
> These examples and others that are cited in our warning letters are not indicative of the labeling practices of the food industry as a whole. In my conversations with

-10-

industry leaders, I sense a strong desire within the industry for a level playing field and a commitment to producing safe, healthy products. That reinforces my belief that FDA should provide as clear and consistent guidance as possible about food labeling claims and nutrition information in general, and specifically about how the growing use of front-of-pack calorie and nutrient information can best help consumers construct healthy diets.

I will close with the hope that these warning letters will give food manufacturers further clarification about what is expected of them as they review their current labeling. I am confident that our past cooperative efforts on nutrition information and claims in food labeling will continue as we jointly develop a practical, science-based front-of-pack regime that we can all use to help consumers choose healthier foods and healthier diets.

http://www.fda.gov/Food/LabelingNutrition/ucm202733.htm?utm_campaign=Google2&utm_source=fdaSearch&utm_medium=website&utm_term=Open Letter to Industry from Dr. Hamburg&utm_content=1

33.     Defendant continues to utilize unlawful food labeling claims despite the express guidance of the FDA in the Open Letter.

34.     At the same time that it issued its Open Letter, the FDA issued a number of warning letters to companies whose products were misbranded as a result of their unlawful labels.

35.     In its 2010 Open Letter to industry the FDA stated that the agency not only expected companies that received warning letters to correct their labeling practices but also anticipated that other companies would examine their food labels to ensure that they are in full compliance with food labeling requirements and make changes where necessary. Defendant did not change the labels on its Misbranded Food Products in response to these warning letters.

36.     In addition to its general guidance about unlawful labeling practices, the FDA has issued specific guidance about the unlawful practices at issue here.  In October of 2009, the FDA issued its *Guidance for Industry:  Ingredients Declared as Evaporated Cane Juice,* which advised the industry that the term "evaporated cane juice" was unlawful.

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocuments/FoodLabelingNutrition/ucm181491.htm.

37.     In addition to its guidance to industry in general, the FDA has repeatedly sent warning letters to specific companies regarding specific violations such as the ones at issue in this case. The FDA's July 2012 Regulatory Procedures Manual indicates that a warning letter

*Class Action Amended Complaint - Case No. CV13-0492 (EJD)*

"communicates the agency's position on a matter" and that "[w]arning Letters are issued only for violations of regulatory significance." The FDA publicly posted these letters on its website with the expectation that food manufacturers would revise their product labels to correct any violations outlined in these warning letters.

38.    In particular, the FDA has issued warning letters to at least a half-dozen companies for utilizing the unlawful term "evaporated cane juice."

39.    Defendant has continued to ignore the 2009 FOP Guidance which detailed the FDA's guidance on how to make food labeling claims as well as the 2009 Guidance on evaporated cane juice and the FDA warning letters on evaporated cane juice. As such, Defendant's Misbranded Food Products continue to run afoul of the 2009 FOP Guidance and the 2009 Guidance on evaporated cane juice and the FDA warning letters on evaporated cane juice as well as federal and California law.

40.    Despite the numerous FDA warning letters and the 2009 Guidance on evaporated cane juice or the FDA evaporated cane juice warning letters and the 2010 Open Letter, Defendant has not removed the unlawful and misleading food labeling ingredient from Defendant's Misbranded Food Products.

41.    Despite the FDA's numerous warnings to industry, Defendant has continued to sell products bearing unlawful food labeling claims without meeting the requirements to make such claims.

42.    Even in the face of direct FDA regulation that "evaporated cane juice" is a "false and misleading" term, Defendant continues to use the term at the present time.

C.    **Defendant's Unlawful and Misleading "Evaporated Cane Juice" Claims Cause Defendant's Food Products To Be Misbranded**

43.    21 C.F.R. §§ 101.3 and 102.5, which have been adopted by California, prohibit manufacturers from referring to foods by anything other than their common and usual names. 21 C.F.R. § 101.4, which has been adopted by California, prohibits manufacturers from referring to ingredients by anything other than their common and usual names. Defendant has violated these provisions by failing to use the common or usual name for ingredients mandated by law. In

-12-

1  particular, Defendant has used and continues to use the term "evaporated cane juice" on products

2  in violation of numerous labeling regulations designed to protect consumers from misleading

3  labeling practices. Defendant's practices also violate express FDA policies.

4      44.     For example, Defendant violated the FDA's express policy with respect to the listing

5  of certain ingredients such as sugar or dried cane syrup. As stated by the FDA, "FDA's current

6  policy is that sweeteners derived from sugar cane syrup should not be declared as 'evaporated cane

7  juice' because that term falsely suggests that the sweeteners are juice."

8      45.     The FDA "considers such representations to be false and misleading under section

9  403(a)(1) of the Act (21 U.S.C. 343(a)(1) because they fail to reveal the basic nature of the food

10  and its characterizing properties (*i.e.*, that the ingredients are sugars or syrups) as required by 21

11  U.S.C. 102.5."

12      46.     In October of 2009, the FDA issued *Guidance for Industry: Ingredients Declared as*

13  *Evaporated Cane Juice*, which that:

14      "…the term "evaporated cane juice" has started to appear as an ingredient on food
15      labels, most commonly to declare the presence of sweeteners derived from sugar
        cane syrup. However, FDA's current policy is that sweeteners derived from sugar
16      cane syrup should not be declared as "evaporated cane juice" because that term
        falsely suggests that the sweeteners are juice…
17

18      "Juice" is defined by 21 C.F.R. 120.1(a) as "the aqueous liquid expressed or
        extracted from one or more fruits or vegetables, purees of the edible portions of one
19      or more fruits or vegetables, or any concentrates of such liquid or puree." …

20      "As provided in 21 C.F.R. 101.4(a)(1), "Ingredients required to be declared on the
        label or labeling of a food . . . shall be listed by common or usual name . . . ." The
21      common or usual name for an ingredient is the name established by common usage
        or by regulation (21 C.F.R. 102.5(d)). The common or usual name must accurately
22      describe the basic nature of the food or its characterizing properties or ingredients,
        and may not be "confusingly similar to the name of any other food that is not
23      reasonably encompassed within the same name" (21 C.F.R. 102.5(a))…

24
        "Sugar cane products with common or usual names defined by regulation are sugar
25      (21 C.F.R. 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 C.F.R.
        168.130). Other sugar cane products have common or usual names established by
26      common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar,
        muscovado sugar, and demerara sugar)…
27

28      "The intent of this draft guidance is to advise the regulated industry of FDA's view

-13-

that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 C.F.R. 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

"Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 C.F.R. 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 C.F.R. 101.30).

47.     Despite the issuance of the 2009 FDA Guidance, Defendant has not removed the unlawful and misleading food labeling ingredients from its Misbranded Food Products.

48.     Defendant often lists ingredients with unlawful and misleading names.  The Nutrition Facts label of the Misbranded Food Products list "evaporated cane juice" as an ingredient. According to the FDA, "'evaporated cane juice' is not the common or usual name of any type of sweetener, including dried cane syrup."  The FDA provides that "cane syrup has a standard of identity defined by regulation in 21 C.F.R. 168.130, the common or usual name for the solid or dried form of cane syrup is 'dried cane syrup.'"  Similarly, sugar or sucrose is defined by regulation in 21 C.F.R. §101.4(b)(20) and §184.1854, as the common or usual name for material obtained from the crystallization from sugar cane or sugar beet juice that has been extracted by pressing or diffusion, then clarified and evaporated.

49.     Various FDA warning letters have made it clear that the use of the term "evaporated cane juice" is unlawful because the term does not represent the common or usual name of a food or ingredient. These warning letters indicate that foods bearing labels which contain the term "evaporated cane juice" are misbranded.

50.     Such products mislead consumers into paying a premium price for inferior or undesirable ingredients or for products that contain ingredients not listed on the label.

51.     Defendant's false, unlawful and misleading ingredient listings render its products misbranded under federal and California law.  Misbranded products cannot be legally sold, have no

-14-

economic value, and are legally worthless. Plaintiff and the class paid a premium price for the Misbranded Food Products.

52. Defendant has also made these illegal claims on its websites and in advertising in violation of federal and California law.

**D.** **Defendant Makes Unlawful Low Sodium Nutrient Content Claims**

53. In order to appeal to consumer preferences, Defendant has repeatedly made false and unlawful "low sodium" nutrient content claims about the sodium levels in its products.

54. These claims misrepresent and greatly understate the levels of sodium in their Misbranded Food Products. In doing so these claims violate 21 C.F.R. § 101.61 which has been adopted by the State of California.

55. Defendant recognized that because of the significant health risks associated with sodium intake, consumers were increasingly seeking to avoid or limit sodium in their diets and thus were looking for low sodium food options.

56. Rather than reformulate all of their food products so that they were at or below the "low" sodium benchmarks they knew consumers were seeking, the Defendant simply misrepresented a number of its sodium laden products and made false "low sodium" representations about these products and falsely depicted these products in their labeling, advertising and marketing materials and on their websites as being "low sodium" options when in fact they exceed the maximum levels of sodium that a "low sodium" product can possess.

57. Pursuant to 21 C.F.R. § 101.61(b)(4) the term "low sodium" may be used on the labels or labeling of food if the food has a reference amount of less than 30 grams or less and contains 140 mgs or less sodium per reference amount customarily consumed and per 50 grams. By this definition many of the Defendant's "low sodium" products are not, in fact, low sodium products.

58. For example, the EnviroKidz Panda Puffs cereal purchased by Plaintiff has a serving size of 30 grams and contains 130 mgs of sodium per serving size. On a 50 gram basis this equates to over 216 mgs of sodium, far more than the maximum 140 mgs cutoff for a legal low sodium claim. Notwithstanding this fact, Defendant misrepresents this product as being "low sodium" and thus understates the levels of sodium in the product.

59.     The low sodium claim on the EnviroKidz Panda Puffs cereal purchased by Plaintiff is simply a false statement. By definition "low sodium" cereal could not contain more than 140 mgs of sodium per reference amount customarily consumed and per 50 grams.

60.     The EnviroKidz Panda Puffs cereal bought by the Plaintiff had more than 150% of the maximum level allowed for a low sodium claim.

61.     This false representation unlawfully overstated the healthiness of Defendant's products while understating their relative sodium levels.

62.     The Plaintiff bought Misbranded Food  Products whose labeling and marketing materials falsely represented that the Misbranded Food Products had low relative sodium levels and thus represented a "low sodium" option. These products were falsely labeled and misbranded because contrary to the various false representations that they were a "low sodium" option, they contained disqualifying levels of sodium precluding such a representation. For example, the Defendant's EnviroKidz Panda Puffs cereal bought by Plaintiff was incapable of complying with the "low sodium" standard and in fact its sodium levels were far higher than allowed by law.

63.     A reasonable consumer would expect that when Defendant represents its products as a "low sodium" option, the product will in fact be "low" in sodium and that Defendant was not using the term "low sodium" in a way that violates the law.  A reasonable consumer would understand that if a Defendant compares its product with another product, that comparison will be truthful and accurate and not false and misleading.

64.     Consumers such as the Plaintiff are  thus misled into purchasing Defendant's purportedly "low sodium" products that actually contain levels of sodium higher than the maximum upper limit for a "low sodium" product and that are not "low sodium" as falsely represented on their labeling and in their marketing materials.  Defendant's products in this respect are misbranded under federal and California law.

65.     Plaintiff relied on Defendant's "low sodium" claims when making Plaintiff's purchase decisions over the last four years and were misled because they erroneously believed the express misrepresentations that the Defendant's products Plaintiff was purchasing were "low sodium" as represented. Purchasing "low sodium" products was important to Plaintiff in trying to

1  buy "healthy" food products. Plaintiff would not have purchased these products had Plaintiff known

2  that the Defendant's products' sodium claims were false.

3          66.     For these reasons, Defendant's "low sodium" claims at issue in this Complaint are

4  false and misleading and in violation of identical California and federal law and the products at issue

5  are misbranded as a matter of law. In addition, the Defendant made other unlawful nutrient content

6  claims such as those listed above in paragraph 2 by using defined nutrient content terms such as

7  "rich" or "high" or undefined terms such as "great source" unlawfully in violation of 21 C.F.R. §§

8  101.13 and 101.54 to describe its products or ingredients.

9          67.     Therefore, Defendant's Misbranded Food Products are misbranded as a matter of

10  California and federal law and cannot be sold or held and thus have no economic value and are

11  legally worthless. Plaintiff and members of the Class who purchased these products paid an

12  unwarranted premium for these products.

13          **E.     Defendant Makes Unlawful Health Claims**

14          68.     Defendant has violated identical California and federal law by making numerous

15  unapproved health claims about Defendant's products. Defendant has also violated identical

16  California and federal law by making numerous unapproved claims about the ability of Defendant's

17  products and their ingredients to cure, mitigate, treat and prevent various diseases that render the

18  products unapproved drugs under California and federal law. Moreover, in promoting the ability of

19  its Misbranded Food Products to have an effect on certain diseases such as diabetes, Defendant has

20  violated the advertising provisions of the Sherman law.

21          69.     A health claim is a statement expressly or implicitly linking the consumption of a

22  food substance (*e.g.*, ingredient, nutrient, or complete food) to risk of a disease such as diabetes or a

23  health-related condition such as high-blood pressure. *See* 21 C.F.R. §101.14(a)(1), (a)(2), and

24  (a)(5). Only health claims made in accordance with FDCA requirements, or authorized by FDA as

25  qualified health claims, may be included in food labeling. Other express or implied statements that

26  constitute health claims, but that do not meet statutory requirements, are prohibited in labeling

27  foods.

28

70.     21 C.F.R. § 101.14, which has been expressly adopted by California, provides when and how a manufacturer may make a health claim about its product.  A "Health Claim" means any claim made on the label or in labeling of a food, including a dietary supplement, that expressly or by implication, including "third party" references, written statements (*e.g.*, a brand name including a term such as "heart"), symbols (*e.g.*, a heart symbol), or vignettes, characterizes the relationship of any substance to a disease or health-related condition. Implied health claims include those statements, symbols, vignettes, or other forms of communication that suggest, within the context in which they are presented, that a relationship exists between the presence or level of a substance in the food and a disease or health-related condition (*see* 21 CFR § 101.14(a)(1)).

71.     Further, health claims are limited to claims about disease risk reduction, and cannot be claims about the diagnosis, cure, mitigation, or treatment of disease. An example of an authorized health claim is: "Three grams of soluble fiber from oatmeal daily in a diet low in saturated fat and cholesterol may reduce the risk of heart disease. This cereal has 2 grams per serving."

72.     A claim that a substance may be used in the diagnosis, cure, mitigation, treatment, or prevention of a disease is a drug claim and may not be made for a food. 21 U.S.C. § 321(g)(1)(D).

73.     The use of the term "healthy" is not a health claim but rather an implied nutrient content claim about general nutrition that is defined by FDA regulation. In general, the term may be used in labeling an individual food product that:

> Qualifies as both low fat and low saturated fat;
> Contains 480 mg or less of sodium per reference amount and per labeled serving, and per 50 g (as prepared for typically rehydrated foods) if the food has a reference amount of 30 g or 2 tbsps or less;
>
> Does not exceed the disclosure level for cholesterol (*e.g.*, for most individual food products, 60 mg or less per reference amount and per labeled serving size); *and*
>
> Except for raw fruits and vegetables, certain frozen or canned fruits and vegetables, and enriched cereal-grain products that conform to a standard of identity, provides at least 10% of the daily value (DV) of vitamin A, vitamin C,

> calcium, iron, protein, *or* fiber per reference amount. Where eligibility is based on a nutrient that has been added to the food, such fortification must comply with FDA's fortification policy.

21 C.F.R. § 101.65(d)(2).

74.     The FDA's regulation on the use of the term healthy also encompasses other, derivative uses of the term health (*e.g.*, healthful, healthier) in food labeling. 21 C.F.R. § 101.65(d).

75.     Defendant has violated the provisions of § 21 C.F.R. §101.14, 21 U.S.C. § 321(g)(1)(D) and 21 U.S.C. § 352(f)(1) by including certain claims on their product labeling.

76.     Defendant makes unlawful health related claims. For example, Defendant claims that the ingredients in its cereals, such as those bought by the Plaintiff, protect the immune system, have "heart protecting properties," lower blood pressure rates, lower rates of hypertension, lower cholesterol levels, prevent type 2 diabetes, lower levels of obesity, reduce the risk of cardiovascular disease and lower mortality.

77.     The therapeutic claims on Defendant's labeling establish that Defendant's products are drugs because they are intended for use in the cure, mitigation, treatment, or prevention of disease. Defendant's products are not generally recognized as safe and effective for the above referenced uses and, therefore, the products would be "new drug[s]" under section 201(p) of the Act [21 U.S.C. § 321(p)]. New drugs may not be legally marketed in the U.S. without prior approval from the FDA as described in section 505(a) of the Act [21 U.S.C. § 355(a)]. FDA approves a new drug on the basis of scientific data submitted by a drug sponsor to demonstrate that the drug is safe and effective. Defendant also violated California Health & Safety Code § 110403 which prohibits the advertisement of products that are represented to have any effect on enumerated conditions, disorders and diseases unless the materials have federal approval.

78.     Plaintiff saw such health related claims and relied on Defendant's health claims which  influenced Plaintiff's decision to purchase Defendant's products. Plaintiff would not have bought the products had Plaintiff known Defendant's claims were unapproved and that the products were thus misbranded.

-19-

79.     Plaintiff and members of the Class was misled into the belief that such claims were legal and had passed regulatory muster and were supported by science capable of securing regulatory acceptance. Because this was not the case, Plaintiff and members of the Class have been deceived.

80.     Defendant's materials and advertisements not only violate regulations adopted by California, such as 21 C.F.R. § 101.14,  they also violate California Health & Safety Code § 110403 which  prohibits the advertisement of products that are represented to have any effect  on enumerated conditions, disorders and diseases unless the materials have federal approval.

81.     Plaintiff and members of the Class have been misled by Defendant's unlawful labeling practices and actions into purchasing products they would not have otherwise purchased had they known the truth about these products. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

82.     Defendant's health related claims are false and misleading and the products are in this respect misbranded under identical California and federal laws. Misbranded products cannot be legally sold and thus have no economic value and are legally worthless.

F.      **Defendant Violates California Law By Making Unlawful And False Claims That Its Misbranded Food Products Are "Free" of Preservatives And By FailingTo Disclose On Its Misbranded Food Products' Labels The Presence Of Preservatives In Those Products As Required By California Law**

83.     Despite the fact that its Misbranded Food Products contained chemical preservatives, Defendant falsely stated on the labeling of its Misbranded Food Products that they were free of preservatives. This statement was demonstrably false and misled consumers such as the Plaintiff who relied on the statements.

84.     For example, Defendant's EnviroKids cereal bought by Plaintiff bore such a false labeling statement. In fact, this product contained tocopherols, which are listed as chemical preservatives in 21 C.F.R. § 182.3890 and which meet the definition of chemical preservatives incorporated into California and federal law in 21 C.F.R. § 101.22. Such preservatives are an unnatural additive.

-20-

85.     Given the presence of this chemical preservative, representing such a product as preservative free is both false and misleading and renders the product misbranded.

86.     Moreover, even if Defendant had not included a false representation that its Misbranded Food Products were free of preservatives on its product labeling, these products would have still been misbranded as a matter of law because of Defendant's failure to disclose the presence of such ingredients as mandated by identical California and federal law.

87.     "Under California law" food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact (California Health & Safety Code § 110740). California's law is identical to federal law on this point.

88.     Pursuant to 21 C.F.R. § 101.22 which has been adopted by California, "[a] statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food." 21 C.F.R. §  101.22 defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, or oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."

89.     Defendant's Misbranded Food Products were misbranded because they contained chemical preservatives like tocopherols but failed to disclose that fact. Moreover, Defendant falsely misrepresented the function of this chemical by labeling it natural vitamin E thus misrepresenting its use as vitamin fortification when it was merely a preservative present at a nutritionally insignificant amount.

90.     For example, while Defendant's EnviroKidz cereal bought by Plaintiff, contains tocopherols which is used in that product as a type of chemical preservative designed to retard rancidity, the products' label fails to disclose the fact that the tocopherols are being used as a preservative in those products by including a parenthetical such as (preservative) or (to retard spoilage) after the term tocopherols in the ingredient statement. Because Defendant unlawfully fails to indicate these ingredients are being used as chemical preservatives and misrepresents them as a

fortifying vitamin, a reasonable consumer would have no reason to doubt the preservative free claim.

91.     A reasonable consumer would expect that when Defendant made a representation on its products' labels that such products were "free" of preservatives that such a representation was true. A reasonable consumer would also expect that when Defendant lists its products' ingredients that it would make all disclosures required by law such as the disclosure of chemical preservatives and coloring mandated by identical California and federal law.

92.     Plaintiff saw Defendant's label representations that its products were "free" of preservatives and relied on them in the reasonable expectation that such a representation was true. Plaintiff based her purchasing decisions in part on the belief that these products did not contain chemical preservatives or artificial ingredients.

93.     Plaintiff did not know, and had no reason to know, that Defendant's Misbranded Food Products contained undisclosed chemical preservatives because 1) Defendant falsely represented on its label that the products were "free" of preservatives and 2) failed to disclose those chemical preservatives as required by California and federal law.

94.     Consumers are thus misled into purchasing Defendant's products with false and misleading labeling statements and ingredient descriptions, which do not describe the basic nature of the ingredients, as  required by California Health & Safety Code § 110740 and  21 C.F.R. §§ 101.22 which has been adopted as law by California.

95.     Had Plaintiff been aware that the Misbranded Food Products she purchased contained chemical preservatives she would not have purchased the products. Plaintiff had other alternatives that lacked such ingredients and Plaintiff also had cheaper alternatives.

96.     Because of their false label representations and omissions about chemical preservatives Defendant's Misbranded Food Products are in this respect misbranded under identical federal and California law, including California Health & Safety Code § 110740.  Misbranded products cannot be legally sold and have no economic value and are legally worthless. Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

**G.** **Defendant Has Violated California Law By Using Misleading Containers That Are Slack Filled With Nonfunctional Slack Fill**

97.    Pursuant to C.F.R. 100.100 which has been adopted by California:

In accordance with section 403(d) of the act, a food shall be deemed to be misbranded if its container is so made, formed, or filled as to be misleading.

(a) A container that does not allow the consumer to fully view its contents shall be considered to be filled as to be misleading if it contains nonfunctional slack-fill. Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein. Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons other than:

(1) Protection of the contents of the package;

(2) The requirements of the machines used for enclosing the contents in such package;

(3) Unavoidable product settling during shipping and handling;

(4) The need for the package to perform a specific function (e.g., where packaging plays a role in the preparation or consumption of a food), where such function is inherent to the nature of the food and is clearly communicated to consumers;

(5) The fact that the product consists of a food packaged in a reusable container where the container is part of the presentation of the food and has value which is both significant in proportion to the value of the product and independent of its function to hold the food, e.g., a gift product consisting of a food or foods combined with a container that is intended for further use after the food is consumed; or durable commemorative or promotional packages; or

(6) Inability to increase level of fill or to further reduce the size of the package (e.g., where some minimum package size is necessary to accommodate required food labeling (excluding any vignettes or other non-mandatory designs or label information), discourage pilfering, facilitate handling, or accommodate tamper-resistant devices).

98.    Defendant has routinely employed slack filled packaging containing non-functional slack fill to mislead consumers into believing they were receiving more than they actually were. These include the boxes of Heritage Flakes and EnviroKidz Panda Puffs cereal.

99.    Defendant lacked any lawful justification for doing so.

**H.** **Defendant Has Violated California Law**

100.    Defendant has violated California Health & Safety Code § 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on

products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

101.    Defendant has violated California Health & Safety Code § 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely advertised food.

102.    Defendant has violated California Health & Safety Code §§ 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely advertised.

103.    Defendant has violated California Health & Safety Code § 110660 because its product labeling is false and misleading in one or more ways.

104.    Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110670 because their labeling fails to conform with the requirements for nutrient content and health claims set forth in 21 U.S.C. § 343(r) and the regulations adopted thereto.

105.    Defendant has violated California Health & Safety Code § 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded.

106.    Defendant's Misbranded Food Products are misbranded under California Health & Safety Code § 110755 because the products are purported to be or are represented for special dietary uses, and their labels fail to bear such information concerning their vitamin, mineral, and other dietary properties as the Secretary determines to be, and by regulations prescribes as, necessary in order fully to inform purchasers as to its value for such uses.

107.    Defendant has violated California Health & Safety Code § 110765, which makes it unlawful for any person to misbrand any food.

108.    Defendant has violated California Health & Safety Code § 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

109.    Defendant has violated the standards set by 21 C.F.R. §§ 101.4 and 102.5 which has been incorporated by reference in the Sherman Law, by failing to include on its product labels the common and usual names of ingredients contained in its food products. Additionally, Defendant has

-24-

violated the standard set by 21 C.F.R. § 101.14 by making unlawful health claims about its products

such as those referenced in paragraphs 2 and 78 above. Defendant also violated the standard set by

21 C.F.R. §§ 101.13 and 101.61 by making unlawful low sodium claims about its products and 21

C.F.R. §§ 101.13 and 101.54 by utilizing unlawful nutrient content claims.

## I.   **Plaintiff Purchased Defendant's Misbranded Food Products**

110.   Plaintiff cares about the nutritional content of food and seeks to maintain a healthy

diet.

111.   During the Class Period, Plaintiff purchased Defendant's Misbranded Food

Products, including Heritage Flakes and EnviroKidz Panda Puffs cereal.

112.   Plaintiff would not have purchased Defendant's Misbranded Food Products had

Plaintiff known that the Misbranded Food Products contained sugar or dried cane syrup.  Plaintiff

read and reasonably relied upon the labels on Defendant's Misbranded Food Products, including the

ingredient "evaporated cane juice" on the back panels, before purchasing Defendant's products.

Plaintiff also read and reasonably relied upon Defendant's unlawful and deceptive

misrepresentations on Defendant's website before purchasing Defendant's products, including its

unlawful health claims described in Paragraphs 2 and 77 above.  Defendant's web address is printed

on its package labels, and by law Defendant's website misrepresentations are incorporated in its

labels.

113.   Plaintiff relied on Defendant's package labeling including the side panel ingredients

list referencing "evaporated cane juice," and the nutrient content claims and based and justified the

decision to purchase Defendant's products in substantial part on Defendant's package labeling,

including the labeling claiming that Defendant's product contained as an ingredient "evaporated

cane juice" and that the Defendant's products possessed certain nutritional and health benefits

detailed above, including in Paragraphs 2 and 77.

114.   At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's

products were misbranded as set forth herein, and would not have bought the products had Plaintiff

known the truth about them.

115.   At point of sale, Plaintiff did not know, and had no reason to know, that Defendant's

1    "evaporated cane juice" ingredient name was unlawful and unauthorized as set forth herein.  Had

2    Plaintiff known this information, Plaintiff would not have bought the products.

3         116.    Plaintiff did not know and had no reason to know that Defendant's Misbranded Food

4    Products were misbranded and bore false food labeling claims despite failing to meet the

5    requirements to make that food labeling claim including the health claims, low sodium claims and

6    other nutritional content claims.  Had Plaintiff known this information, Plaintiff would not have

7    bought the products.

8         117.    In reliance on Defendant's "evaporated cane juice" ingredient name and other

9    product claims detailed above, Plaintiff and thousands of others in California and throughout the

10   United States purchased the Misbranded Food Products at issue.

11        118.    Defendant's labeling, advertising and marketing as alleged herein are false and

12   misleading and were designed to increase sales of the products at issue.  Defendant's

13   misrepresentations are part of an extensive labeling, advertising and marketing campaign, and a

14   reasonable person would attach importance to Defendant's misrepresentations in determining

15   whether to purchase the products at issue.

16        119.    A reasonable person would also attach importance to whether Defendant's products

17   were legally salable, and capable of legal possession, and to Defendant's representations about

18   these issues in determining whether to purchase the products at issue. Plaintiff would not have

19   purchased Defendant's Misbranded Food Products had Plaintiff known they were not capable of

20   being legally sold or held.

21        120.    Plaintiff and members of the Class relied on and were deceived by Defendant's

22   misleading slack filled packaging.

23        121.    Plaintiff purchased slack filled packages of Defendant's products, including

24   Defendant's Heritage Flakes and EnviroKidz Panda Puffs cereal containing nonfunctional slack fill.

25        122.    Plaintiff did not know, and had no reason to know, that Defendant's Misbranded

26   Food Products were slack filled with nonfunctional slack fill and misbranded. Plaintiff and

27   members of the Class who purchased the Misbranded Food Products paid an unwarranted premium

28

-26-

for these products. Because of Defendant's slack fill packaging violations these products were misbranded and could not be legally held or sold. They were legally and economically worthless.

123.     As a result of Defendant's unlawful use of the term "evaporated cane juice, its use of unlawful health claims, it use of unlawful low sodium and other nutrient content claims and its unlawful slack filling of its packaging with nonfunctional slack fill, Plaintiff and the Class members purchased the Misbranded Food Products at issue. Plaintiff and the Class members have been proximately harmed, and Defendant has been unjustly enriched, by Defendant's deceptive and unlawful scheme.

## CLASS ACTION ALLEGATIONS

124.     Plaintiff brings this action as a class action pursuant to Federal Rule of Procedure 23(b)(2) and 23(b)(3) on behalf of the following class:

> All persons in the United States, and alternatively, a sub-class of all persons in California who, within the last four years, purchased Defendant's products
> 1) labeled with the ingredient evaporated cane juice; 2) labeled or advertised with an unapproved  health or drug claim; 3) labeled or advertised with a low sodium claim despite containing levels of sodium exceeding the maximum level of 140 mgs specified in 21 C.F.R. § 101.61; or 5)  sold in packaging containing non-functional slack fill (the "Class").

125.     The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

126.     This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

127.     <u>Numerosity</u>:  Based upon Defendant's publicly available sales data with respect to the misbranded products at issue, it is estimated that the Class numbers in the thousands, and that joinder of all Class members is impracticable.

128.     <u>Common Questions Predominate</u>:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each

Class member to recover.  Questions of law and fact common to each Class member include, just for example:

a.   Whether Defendant engaged in unlawful, unfair or deceptive business practices by failing to properly package and label its Misbranded Food Products sold to consumers;

b.   Whether the food products at issue were misbranded as a matter of law;

c.   Whether Defendant made unlawful and misleading "evaporated cane juice" or health or low sodium claims with respect to food products sold to consumers;

d.   Whether Defendant utilized nonfunctional slack fill packaging or failed to properly list or describe the ingredients in its products;

e.   Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq.*, California Bus. & Prof. Code § 17500, *et seq.*, the Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.*, California Civ. Code § 1790, *et seq.*, 15 U.S.C. § 2301, *et seq.*, and the Sherman Law;

f.   Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

g.   Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the Class; and

h.   Whether Defendant was unjustly enriched by its deceptive practices.

129.   <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Misbranded Food Products during the Class Period.  Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct in violation of California law.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.  In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class.  Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the Class members and are based on the same legal theories.

130.    <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the Class.
Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to
the interests of the Class members.  Plaintiff has retained highly competent and experienced class
action attorneys to represent her interests and those of the members of the Class.  Plaintiff and
Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this
class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the Class
members and will diligently discharge those duties by vigorously seeking the maximum possible
recovery for the Class.

131.    <u>Superiority</u>:  There is no plain, speedy or adequate remedy other than by
maintenance of this class action.  The prosecution of individual remedies by members of the Class
will tend to establish inconsistent standards of conduct for Defendant and result in the impairment
of Class members' rights and the disposition of their interests through actions to which they were
not parties.  Class action treatment will permit a large number of similarly situated persons to
prosecute their common claims in a single forum simultaneously, efficiently, and without the
unnecessary duplication of effort and expense that numerous individual actions would engender.
Further, as the damages suffered by individual members of the Class may be relatively small, the
expense and burden of individual litigation would make it difficult or impossible for individual
members of the Class to redress the wrongs done to them, while an important public interest will be
served by addressing the matter as a class action.  Class treatment of common questions of law and
fact would also be superior to multiple individual actions or piecemeal litigation in that class
treatment will conserve the resources of the Court and the litigants, and will promote consistency
and efficiency of adjudication.

132.    The prerequisites to maintaining a class action for injunctive or equitable relief
pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds
generally applicable to the Class, thereby making appropriate final injunctive or equitable relief
with respect to the Class as a whole.

133.    The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3)
are met as questions of law or fact common to class members predominate over any questions

affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

134.    Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Business and Professions Code § 17200 *et seq.*
### Unlawful Business Acts and Practices

135.    Plaintiff incorporates by reference each allegation set forth above.

136.    Defendant's conduct constitutes unlawful business acts and practices.

137.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

138.    Defendant is a corporation and, therefore, a "person" within the meaning of the Sherman Law.

139.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of the advertising provisions of Article 3 of the Sherman Law and the misbranded food provisions of Article 6 of the Sherman Law.

140.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of § 17500 *et seq.*, which forbids untrue and misleading advertising.

141.    Defendant's business practices are unlawful under § 17200 *et seq.* by virtue of Defendant's violations of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*

142.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and which had no economic value and were legally worthless. Plaintiff and the Class paid a premium for the Misbranded Food Products.

143.    As a result of Defendant's illegal business practices, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct and such or orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any class member any money paid for the Misbranded Food Products.

144.     Defendant's unlawful business acts present a threat and reasonable continued likelihood of injury to Plaintiff and the Class.

145.     As a result of Defendant's conduct, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**SECOND CAUSE OF ACTION**
**Business and Professions Code § 17200 *et seq.***
**<u>Unfair Business Acts and Practices</u>**

146.     Plaintiff incorporates by reference each allegation set forth above.

147.     Defendant's conduct as set forth herein constitutes unfair business acts and practices.

148.     Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

149.     Plaintiff and members of the Class suffered a substantial injury by virtue of buying Defendant's Misbranded Food Products that they would not have purchased absent Defendant's illegal conduct.

150.     Defendant's deceptive marketing, advertising, packaging and labeling of Misbranded Food Products and sale of unsalable misbranded products that were illegal to possess was of no benefit to Plaintiff and members of the Class, and the harm to consumers is substantial.

151.     Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being legally sold or held and that had no economic value and were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

152.     Plaintiff and the Class who purchased Defendant's Misbranded Food Products had no way of reasonably knowing that the products were misbranded and were not properly  marketed, advertised, packaged and labeled, and thus could not have reasonably avoided the injury each of them suffered.

153.     The consequences of Defendant's conduct as set forth herein outweigh any justification, motive or reason therefor.  Defendant's conduct is and continues to be unlawful,

illegal, immoral, unethical, unscrupulous, contrary to public policy, and is substantially injurious to Plaintiff and the Class.

154.    Pursuant to Business and Professions Code § 17203, as a result of Defendant's conduct, Plaintiff and the Class, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**THIRD CAUSE OF ACTION**
**Business and Professions Code § 17200 *et seq.***
**<u>Fraudulent Business Acts and Practices</u>**

155.    Plaintiff incorporates by reference each allegation set forth above.

156.    Defendant's conduct as set forth herein constitutes fraudulent business practices under California Business and Professions Code sections § 17200 *et seq.*

157.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

158.    Defendant's misleading marketing, advertising, packaging and labeling of the Misbranded Food Products and misrepresentations that the products were salable, capable of possession and not misbranded were likely to deceive reasonable consumers, and in fact, Plaintiff and members of the Class were deceived.  Defendant has engaged in fraudulent business acts and practices.

159.    Defendant's fraud and deception caused Plaintiff and the Class to purchase Defendant's Misbranded Food Products that they would otherwise not have purchased had they known the true nature of those products.

160.    Defendant sold Plaintiff and the Class Misbranded Food Products that were not capable of being sold or held legally and that had no economic value and were legally worthless. Plaintiff and the Class paid a premium price for the Misbranded Food Products.

161.    As a result of Defendant's conduct as set forth herein, Plaintiff and the Class, pursuant to Business and Professions Code § 17203, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge

-32-

Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**FOURTH CAUSE OF ACTION**
**Business and Professions Code § 17500 *et seq.***
**Misleading and Deceptive Advertising**

162.    Plaintiff incorporates by reference each allegation set forth above.

163.    Plaintiff asserts this cause of action for violations of California Business and Professions Code § 17500 *et seq.* for misleading and deceptive advertising against Defendant.

164.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

165.    Defendant engaged in a scheme of offering Misbranded Food Products for sale to Plaintiff and members of the Class by way of, *inter alia*, product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made within California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that such product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products and are statements disseminated by Defendant to Plaintiff and the Class that were intended to reach members of the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive as set forth herein.

166.    In furtherance of its plan and scheme, Defendant prepared and distributed within California and nationwide via product packaging and labeling, and other promotional materials, statements that misleadingly and deceptively represented the composition and the nature of Defendant's Misbranded Food Products.  Plaintiff and the Class necessarily and reasonably relied on Defendant's materials, and were the intended targets of such representations.

167.    Defendant's conduct in disseminating misleading and deceptive statements in California and nationwide to Plaintiff and the Class was and is likely to deceive reasonable consumers by obfuscating the true composition and nature of Defendant's Misbranded Food

-33-

Products in violation of the "misleading prong" of California Business and Professions Code §17500 *et seq.*

168.    As a result of Defendant's violations of the "misleading prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held, have no economic value and are legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

169.    Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

**FIFTH CAUSE OF ACTION**
**Business and Professions Code § 17500 *et seq.***
**Untrue Advertising**

170.    Plaintiff incorporates by reference each allegation set forth above.

171.    Plaintiff asserts this cause of action against Defendant for violations of California Business and Professions Code § 17500 *et seq.* regarding untrue advertising.

172.    Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

173.    Defendant engaged in a scheme of offering Defendant's Misbranded Food Products for sale to Plaintiff and the Class by way of product packaging and labeling, and other promotional materials.  These materials misrepresented and/or omitted the true contents and nature of Defendant's Misbranded Food Products.  Defendant's advertisements and inducements were made in California and throughout the United States and come within the definition of advertising as contained in Business and Professions Code §17500 *et seq.* in that the product packaging and labeling, and promotional materials were intended as inducements to purchase Defendant's Misbranded Food Products, and are statements disseminated by Defendant to Plaintiff and the Class.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were untrue.

-34-

174.   In furtherance of its plan and scheme, Defendant prepared and distributed in California and nationwide via product packaging and labeling, and other promotional materials, statements that falsely advertise the composition of Defendant's Misbranded Food Products, and falsely misrepresented the nature of those products.  Plaintiff and the Class were the intended targets of such representations and would reasonably be deceived by Defendant's materials.

175.   Defendant's conduct in disseminating untrue advertising throughout California deceived Plaintiff and members of the Class by obfuscating the contents, nature and quality of Defendant's Misbranded Food Products in violation of the "untrue prong" of California Business and Professions Code § 17500.

176.   As a result of Defendant's violations of the "untrue prong" of California Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff and the Class.  Misbranded products cannot be legally sold or held, have no economic value, and are legally worthless.  Plaintiff and the Class paid a premium price for the Misbranded Food Products.

177.   Plaintiff and the Class, pursuant to Business and Professions Code § 17535, are entitled to an order enjoining such future conduct by Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore any money paid for Defendant's Misbranded Food Products by Plaintiff and the Class.

### SIXTH CAUSE OF ACTION
### Consumers Legal Remedies Act, Cal. Civ. Code §1750 *et seq.*

178.   Plaintiff incorporates by reference each allegation set forth above.

179.   This cause of action is brought pursuant to the CLRA.  Plaintiff does not currently seek monetary damages for this cause of action and this cause of action is limited solely to injunctive relief.  Plaintiff intends to amend this Complaint to seek damages in accordance with the CLRA after providing Defendant with notice pursuant to Cal. Civ. Code § 1782.

180.   At the time of any amendment seeking damages under the CLRA, Plaintiff will demonstrate that the violations of the CLRA by Defendant were willful, oppressive and fraudulent, thus supporting an award of punitive damages.

181.     Consequently, Plaintiff and the Class will be entitled to actual and punitive damages against Defendant for its violations of the CLRA.  In addition, pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff and the Class will be entitled to an order enjoining the above-described acts and practices, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court pursuant to Cal. Civ. Code § 1780.

182.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

183.     Defendant sold Misbranded Food Products in California and throughout the United States during the Class Period.

184.     Plaintiff and members of the Class are "consumers" as that term is defined by the CLRA in Cal. Civ. Code §1761(d).

185.     Defendant's Misbranded Food Products were and are "goods" within the meaning of Cal. Civ. Code §1761(a).

186.     By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(5) of the CLRA because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular ingredients, characteristics, uses, benefits and quantities of the goods.

187.     By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(7) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of the goods.

188.     By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(9) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with the intent not to sell the goods as advertised.

-36-

189.   By engaging in the conduct set forth herein, Defendant violated and continues to violate Section 1770(a)(16) of the CLRA, because Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices in that they represent that a subject of a transaction has been supplied in accordance with a previous representation when it has not.

190.   Plaintiff requests that the Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to Cal. Civ. Code § 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Class will continue to suffer harm.

**SEVENTH CAUSE OF ACTION**
**Restitution Based on Unjust Enrichment/Quasi-Contract**

191.   Plaintiff incorporates by reference each allegation set forth above.

192.   As a result of Defendant's fraudulent and misleading labeling, advertising, marketing and sales of Defendant's Misbranded Food Products, Defendant was enriched at the expense of Plaintiff and the Class.

193.   Defendant sold Misbranded Food Products to Plaintiff and the Class that were not capable of being sold or held legally and which had no economic value and were legally worthless. It would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits it received from Plaintiff and the Class, in light of the fact that the products were not what Defendant purported them to be.  Thus, it would be unjust and inequitable for Defendant to retain the benefit without restitution to Plaintiff and the Class of all monies paid to Defendant for the products at issue.

194.   As a direct and proximate result of Defendant's actions, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, prays for judgment against Defendant as follows:

-37-

A.      For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.      For an order awarding, as appropriate, damages, restitution or disgorgement to Plaintiff and the Class for all causes of action other than the CLRA, as Plaintiff does not seek monetary relief under the CLRA, but intends to amend this Complaint to seek such relief;

C.      For an order requiring Defendant to immediately cease and desist from selling Misbranded Food Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell these products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.      For all equitable remedies available pursuant to Cal. Civ. Code § 1780;

E.      For an order awarding attorneys' fees and costs;

F.      For an order awarding punitive damages;

G.      For an order awarding pre-and post-judgment interest; and

H.      For an order providing such further relief as this Court deems proper.

Dated:  May 17, 2013

Respectfully submitted,


   /s/Colin H. Dunn

Colin H. Dunn (*Pro Hac Vice*)
Clifford Law Offices, P.C.
120 North LaSalle – 31st Floor
Chicago, IL 60602
Telephone:  (312) 899-9090
Fax: (312) 251-1160
chd@cliffordlaw.com


Ben F. Pierce Gore (SBN 128515)
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA  95126
Telephone:  (408) 429-6506
Fax:  (408) 369-0752
pgore@prattattorneys.com

*Attorneys for Plaintiff*

*Class Action Amended Complaint - Case No. CV13-0492 (EJD)*