UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SUSAN LEONHART,<br><br>    Plaintiff,<br><br>v.<br><br>NATURE'S PATH FOODS, INC,<br><br>    Defendant. | Case No. 13-cv-00492-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND; AND GRANTING MOTION TO STAY**<br><br>[Re: ECF 65] |

Plaintiff Susan Leonhart brings this putative class action against Defendant Nature's Path Foods, Inc., alleging that Defendant's EnviroKidz Panda Puffs cereal ("Panda Puffs") and Heritage Flakes cereal ("Heritage Flakes") are labeled in a misleading fashion. Defendant moves to dismiss Plaintiff's "low sodium" claims and to stay the action pending the Ninth Circuit's disposition of appeals pending in *Jones v. ConAgra Foods, Inc.*, Case No. 14-16327, and *Brazil v. Dole Packaged Foods*, Case No. 14-17480. Defendant's motion to dismiss and stay was set for hearing on May 21, 2015. However, due to a scheduling error, Plaintiff's counsel did not appear when the case was called for oral argument on that date. The Court engaged in a brief colloquy with Defendant's counsel and submitted the motion without substantive oral argument. For the reasons discussed below, the motion to dismiss regarding Plaintiff's low sodium claims is GRANTED WITH LEAVE TO AMEND and the motion to stay is GRANTED.

**I.    BACKGROUND**

Following several rounds of motion practice, Plaintiff's operative third amended complaint ("TAC") was filed on December 12, 2014, alleging that Defendant's Panda Puffs and Heritage Flakes are labeled misleadingly. First, Plaintiff alleges that the Panda Puffs and Heritage Flakes labels misled her into believing that the products do not contain added sugar, as the labels do not list "sugar" as an ingredient and she did not realize that "evaporated cane juice," which is listed as

an ingredient, is added sugar. Second, Plaintiff alleges that the Panda Puffs label misled her into believing that Panda Puffs is a low sodium product when in fact Panda Puffs does not meet federal regulatory requirements for low sodium labeling. Third, Plaintiff alleges that the Panda Puffs label misled her into believing that Panda Puffs does not contain chemical preservatives, as the label does not identify any chemical preservatives even though tocopherols are used in the product as a chemical preservative. And finally, Plaintiff alleges that Defendant's use of slack fill misled her as to the amount of the product contained in Panda Puffs and Heritage Flakes packaging. Based upon these allegations, Plaintiff asserts claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA").

Plaintiff's evaporated cane juice claims are stayed pursuant to the Court's order issued November 21, 2014. Defendant now contends that the Court should stay the entire action pending disposition of the *Jones* and *Brazil* appeals pending in the Ninth Circuit, and that Plaintiff's low sodium claims are preempted and thus should be dismissed under Federal Rule of Civil Procedure 12(b)(6).

## II. MOTION TO DISMISS LOW SODIUM CLAIMS UNDER RULE 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Defendant contends that Plaintiff's "low sodium" claims are legally insufficient because they are expressly preempted by the Food, Drug & Cosmetic Act ("FDCA") as amended by the Nutrition Labeling and Education Act ("NLEA").

The FDCA "governs the labeling of food, drugs, cosmetic products and medical devices." *Lilly v. ConAgra Foods, Inc.*, 743 F.3d 662, 664 (9th Cir. 2014). "Congress amended the FDCA in 1990 by enacting the Nutrition Labeling and Education Act, which established uniform food labeling requirements, including the familiar and ubiquitous Nutrition Facts Panel found on most food packages." *Id.* "NLEA also provides that no state may 'directly or indirectly establish . . . any requirement for the labeling of food that is not identical' to the federal requirements." *Id.* (quoting 21 U.S.C. § 343-1(a)(5)). "The phrase 'not identical to' means 'that the State

requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food [that] . . . [a]re not imposed by or contained in the applicable [federal regulation] . . . or [d]iffer from those specifically imposed by or contained in the applicable [federal regulation].'" *Id.* at 664-65 (quoting 21 C.F.R. § 100.1(c)(4)) (alterations in original).

Federal labeling requirements regarding the level of sodium in food are set forth in 21 C.F.R. § 101.61, which provides in relevant part that the term "low sodium" may be used on the label or in the labeling of food only if:

> (A) The food has a reference amount customarily consumed greater than 30 g or greater than 2 tablespoons and contains 140 mg or less sodium per reference amount customarily consumed; or
>
> (B) The food has a reference amount customarily consumed of 30 g or less or 2 tablespoons or less and contains 140 mg or less sodium per reference amount customarily consumed *and* per 50 g.

21 C.F.R. § 101.61(b)(4)(i)(A)-(B) (emphasis added).

A table of "[r]eference amounts customarily consumed per eating occasion" is set forth at 21 C.F.R. § 101.12. The table lists four categories of cereal and their corresponding reference amounts:

| Product category | Reference Amount |
|---|---|
| Breakfast cereals (hot cereal type), hominy grits | 1 cup prepared; 40 g plain dry cereal; 55 g flavored, sweetened dry cereal |
| Breakfast cereals, ready-to-eat, weighing less than 20 g per cup, e.g., plain puffed cereal grains | 15 g |
| Breakfast cereals, ready-to-eat weighing 20 g or more but less than 43 g per cup; high fiber cereals containing 28 g or more of fiber per 100 g | 30 g |
| Breakfast cereals, ready-to-eat, weighing 43 g or more per cup; biscuit types | 55 g |

21 C.F.R. 101.12, Table 2, Cereal and Other Grain Products.

If Panda Puffs falls within the first or fourth categories, which have reference amounts greater than 30 g, Panda Puffs may be labeled "low sodium" if it contains 140 mg or less sodium

per reference amount. *See* 21 C.F.R. § 101.61(b)(4)(i)(A). However, if Panda Puffs falls within the second or third categories, which have reference amounts of 30 g or less, Panda Puffs may be labeled "low sodium" only if it contains 140 mg or less sodium per reference amount *and* 140 mg or less sodium per 50 g. *See* 21 C.F.R. § 101.61(b)(4)(i)(B).

Unfortunately, Plaintiff's TAC identifies neither the applicable category of cereal nor the applicable reference amount for Panda Puffs. Instead, Plaintiff alleges that Panda Puffs has a "serving size" of 30 g, and that Panda Puffs contains 130 mgs of sodium per "serving size" but contains 216 mgs of sodium per 50 g. TAC ¶ 37. Plaintiff alleges that the 216 mgs of sodium per 50 g exceeds the maximum of 140 mgs of sodium per 50 g permitted under 21 C.F.R. § 101.61(b)(4) for products claiming to be "low sodium." *Id.* ¶¶ 36-37. These allegations equate "serving size" with "reference amount." It may be that the serving size and the reference amount for Panda Puffs are identical, and in fact Plaintiff asserts in her opposition brief that they are. However, the Court cannot assume that the reference amount for Panda Puffs is 30 g based upon an allegation that the product's serving size is 30 g.

Defendant argues that Panda Puffs complies with 21 C.F.R. § 101.61(b)(4) because it has a reference amount of greater than 2 tablespoons and thus falls within section (A), governing foods with reference amounts of "greater than 30 g or greater than 2 tablespoons." 21 C.F.R. § 101.61(b)(4)(i)(A). Section (A) does not contain the "per 50 g" requirement upon which Plaintiff's clams are based. Defendant, like Plaintiff, confuses "serving size" with "reference amount." Defendant argues that Panda Puffs fits squarely within section (A) because "3/4 cup is greater than 2 tablespoons." Def.'s Mot. at 8. However, "3/4 cup" is the *serving size* listed on the Panda Puffs package. The table listing *reference amounts* for cereals does not indicate that *any* cereal has a reference amount of 3/4 cup. 21 C.F.R. 101.12, Table 2, Cereal and Other Grain Products. In fact, the table lists reference amounts for cereals only in terms of weight (grams) and not in terms of volume (tablespoons or cups) with the exception of the "1 cup prepared" alternative reference amount given for hot cereals and hominy grits.[1]

---

[1] Other products do list reference amounts in terms of volume. For example, "Cream or cream substitutes, fluid" has a reference amount of 15 ml or 1 tablespoon, and "Cream, half & half" has a

4

1    In its reply, Defendant asserts that there is no meaningful distinction between "serving size" and "reference amount" in this case, because the regulations direct that the "serving size" indicated on the food label "shall be the amount in household measure that most closely approximates the reference amount for the product category." 21 C.F.R. § 101.9. That argument actually supports Plaintiff, because the serving size identified on the Panda Puffs package is "3/4 cup (30 g)." TAC Exh. A. If the reference amount for Panda Puffs indeed is 30 g, Panda Puffs falls within section (B) and must comply with the "per 50 g" requirement set forth in that section. However, for the reasons discussed above, the Court cannot assume on this record that the serving size on the Panda Puffs label is equal to its reference amount.

Accordingly, the motion to dismiss the sodium claims is GRANTED WITH LEAVE TO AMEND.

### III. MOTION FOR STAY

Defendant moves to stay this action pending the Ninth Circuit's disposition of the *Jones* and *Brazil* appeals. In *Jones*, the plaintiffs appeal the district court's denial of their motion for certification of three separate classes asserting food labeling claims regarding tomato products, cooking spray products, and hot cocoa products. *Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB, 2014 WL 2702726 (N.D. Cal. June 13, 2014) (appeal filed July 15, 2014). In particular, the plaintiffs challenge the district court's application of the ascertainability and predominance requirements of Federal Rule of Civil Procedure 23 and the standing requirements under California's UCL, FAL, and CLRA. In *Brazil*, the plaintiff appeals the district court's grant of summary judgment for the defendant. *Brazil v. Dole Packaged Foods, LLC*, Case No.: 12-CV-01831-LHK, 2014 WL 6901867 (N.D. Cal. Dec. 8, 2014) (appeal filed Dec. 18, 2014). Among other things, the plaintiff challenges the district court's dismissal of his unjust enrichment claim as duplicative of his statutory claims, application of the standing requirements under California's UCL, and rejection of his damages model.

"In considering whether a stay is appropriate, the Court should weigh three factors: [1] the

---

reference amount of 30 ml or 2 tablespoons. 21 C.F.R. § 101.12, Table 2, Dairy Products and Substitutes.

possible damage which may result from the granting of a stay, [2] the hardship or inequity which a party may suffer in being required to go forward, and [3] the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Gustavson v. Mars, Inc.*, No. 13–cv–04537–LHK, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014) (internal quotation marks and citation omitted) (brackets in original). These factors are drawn from the Supreme Court's decision in *Landis v. North American Co.*, 299 U.S. 248 (1936). *Id.*

With respect to the first factor, possible harm resulting from a stay, Plaintiff argues that "[w]hile there could be some benefit to knowing what the Ninth Circuit will say in the pending *Jones* and *Brazil* appeals . . . it is unreasonable to stay all aspects of this case until those decisions are issued." Pl.'s Opp. at 5-6, ECF 69. Plaintiff points out that such a stay may last a year or even two years. Plaintiff does not, however, identify any harm that a stay would impose upon her, other than frustrating her natural desire to move her case along. She does not identify evidence that might be lost, witnesses who might become unavailable, or any other actual damage to her case that might flow from the requested stay. Moreover, she fails to address the that fact that the Court already has imposed a partial stay of the litigation with respect to the ECJ claims. Accordingly, the Court accords very little weight to this factor.

With respect to the second factor, Defendant asserts that both parties would be in danger of expending resources needlessly if the case were to go forward now only to have the legal landscape change significantly when the Ninth Circuit issues its decisions in *Jones* and *Brazil*. Defendant points out that the parties likely would have to re-open discovery, re-depose key witnesses, and re-brief motions if the Ninth Circuit's rulings change the law. The Court finds this argument to be persuasive, as have other courts within this district that have stayed food labeling cases pending disposition of *Jones* and *Brazil*. *See, e.g., Gustavson*, 2014 WL 6986421, at *3.

Finally, with respect to the third factor, it cannot be disputed that guidance from the Ninth Circuit would aid in the orderly, just resolution of this case. Like *Jones* and *Brazil*, the present case involves food labeling claims under California's UCL, FAL, and CLRA. The present case is nearly through the pleading stage, which means that the class certification issues raised in the

6

*Jones* appeal quickly will become relevant. Thus this Court concludes that the third *Landis* factor weighs heavily in favor of a stay. *Accord, Gustavson*, 2014 WL 6986421, at *3.

Because the first factor weighs only slightly in favor of a stay and the second and third factors heavily favor a stay, Defendant's motion to stay the litigation pending disposition of the appeals in *Jones* and *Brazil* is GRANTED.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

(1) Defendant's motion to dismiss the low sodium claims is GRANTED WITH LEAVE TO AMEND;

(2) Defendant's motion to stay is GRANTED;

(3) Plaintiff shall file any amended complaint within twenty-one days after the stays imposed by this order and the Court's prior order dated November 21, 2014 are lifted.

Dated: June 5, 2015

_____
BETH LABSON FREEMAN
United States District Judge